Filed 6/6/22  P. v. Brown CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

<table>
<tr><td>THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHARLES STEVEN BROWN,<br><br>    Defendant and Appellant.</td><td>2d Crim. No. B313400<br>(Super. Ct. No. A018846)<br>(Los Angeles County)</td></tr>
</table>

Charles Steven Brown appeals from a postjudgment order denying his petition for resentencing on his 1978 murder conviction under Penal Code section 1170.95.[1]  Appellant contends, and the People concede, that the trial court erred in

---

[1] All statutory references are to the Penal Code.  References to section 1170.95 are to the version in effect when the trial court ruled on the petition.  (Stats. 2018, ch. 1015, § 4.)  The statute was further amended effective January 1, 2022 pursuant to Senate Bill No. 775 (2021-2022 Reg. Sess.), but those amendments are not relevant to the issues raised in this appeal.

summarily denying his petition instead of issuing an order to show cause and holding an evidentiary hearing. The People concede the issue. We agree and accordingly reverse.

## FACTUAL AND PROCEDURAL HISTORY

In 1978, appellant and codefendant Michael Paul Brown[2] were charged in a felony complaint with the first degree murder of Katsumi Shigematsu (§§ 187, 189; count 1), robbery (§ 211; count 2), and burglary (§ 459; count 3). The murder count alleged that appellant (who was 17 years old) and Michael (who was 16) killed the victim "with malice aforethought" and included a special circumstance allegation under former subdivision (c)(3)(v) of section 190.2 that appellant "was personally present during the act or acts causing death and with intent to cause death physically aided or committed such act or acts causing death during the commission or attempted commission of a burglary in that [appellant] entered an inhabited dwelling house with the intent to commit grand larceny therein in violation of Section 459 of the Penal Code." It was further alleged as to all three counts that in committing the offenses Michael personally used a deadly weapon, i.e., a knife (§ 12022, subd. (b)).

On June 8, 1978, appellant pleaded guilty to first degree murder and the special circumstance allegation and remaining counts were dismissed. The trial court sentenced him to life in state prison.

In September 2019, appellant petitioned for resentencing under section 1170.95. Appellant requested the appointment of counsel and alleged (1) that a complaint, information or indictment was filed against him that allowed the prosecution to

---

[2] We refer to Michael Paul Brown by his first name to avoid confusion.

proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) that he pleaded guilty to murder in lieu of going to trial because he believed he could have been convicted at trial of felony murder or murder under the natural and probable consequences doctrine; and (3) that he could not now be convicted of murder because the changes to sections 188 and 189 that went into effect on January 1, 2019. The court appointed counsel and ordered the prosecution to file a response to the petition.

In its response, the prosecution asserted that appellant's petition for resentencing should be summarily denied because the record of his conviction precluded him from establishing a prima facie case for relief as a matter of law. The prosecution offered the complaint, the abstract of judgment, the reporter's transcript of appellant's change of plea hearing, the victim's autopsy report, and the post-plea probation report.

The factual summary contained in the probation report, which is based on "information contained in the District Attorney's file," states: "Several days before March 18, 1978, [appellant and Michael] planned to enter the victim's apartment and steal money from her. Rumors in the apartment building led [appellant and Michael] to believe that the victim had a substantial amount of cash in her apartment. On March 18, 1978, [appellant and Michael] went to [the victim's apartment] for the purpose of stealing money from [her]. The victim had been friendly to [Michael] and had given him large sums of money in the past. She was a 60-year-old paraplegic confined to a wheelchair. The victim allowed [appellant and Michael] into her apartment and the three of them began working on a jigsaw puzzle. [Michael] was armed with a hunting knife. He excuses

himself to go to the bathroom and when he returns [he] suddenly stabs the victim in the back twice. [Appellant and Michael] demand money from the victim and when she refused [Michael] stabs her repeatedly in the chest area while [appellant] held her from the rear. During this time [appellant] took a 16-ounce empty Pepsi-Cola bottle and struck the victim over the head. After the attack [appellant and Michael] wheeled the victim into the bedroom and ransacked the apartment finding between $110.00 and $150.00. They then leave the apartment with the radio playing on a rock station. They go to a nearby park and bury the knife and leave a few days later by bus to Texas."

The probation report goes on to state that appellant and Michael were subsequently arrested and "investigators . . . obtained confessions from both [of them]." Although appellant did not submit a written statement, he "[o]rally . . . indicates that [Michael] had the knife and did all of the stabbing. He admits striking the victim over the head with a Pepsi bottle. He states he does not like to remember the offense and does not know how it began. He states that he and [Michael] took $110.00 from the victim. He indicates 'it was stupid.' [Appellant] indicates that he did not try to stop [Michael] from stabbing the victim and that [Michael] appeared to go crazy."

At the change of plea hearing, the prosecutor told appellant and Michael "[e]ach counsel has stated that you wish to plead guilty to . . . [the murder charged in] Count 1 and that the special allegations either remain denied or that there will be no proof against them." The prosecutor asked appellant, "[i]s that what you want to do" and appellant replied, "Yes, sir." The prosecutor subsequently stated: "Now, Count 1 involves entering the residence of Katsumi Shigematsu with the intent to rob her and

4

this occurred on March 18th, 1978, and she was there killed by each of you and together with a knife and a bottle." The prosecutor then asked appellant if he had "discussed the facts of this case with [his] attorney," whether there was "anything further [he] wish[ed] to discuss with [his attorney] as to the facts of the case," and whether he "underst[ood] what the allegation is and what the facts alleged are." Appellant replied "[y]es, sir" to the first and last questions, and "[n]o, sir" to the second.

The prosecutor continued: "[A]s to Count 1 that you did on or about the 18th day of March, 1978 . . . commit the crime of murder in violation of section 187 of the Penal Code, a felony, by yourself with malice aforethought murder one Katsumi Shigematsu . . . in the first degree and that you entered the residence in the course of a burglary with the intent to commit a robbery, how do you plead?" Appellant replied, "Guilty." The prosecutor then reiterated that "the People are not offering any proof on the special allegations except as to [Michael] as to the weapon." Michael subsequently pleaded guilty to count 1 and admitted the weapon use allegation.

At the prima facie hearing on appellant's section 1170.95 petition, the trial court indicated it would not consider the probation report and would base its decision "solely upon the official record of the trial [*sic*], specifically the complaint, the information, the preliminary hearing transcript, the plea which is very significant, the plea transcript, and the abstract of judgment." The court indicated it would not rely on any

5

information in the probation report or police reports and the prosecutor responded that she was "fine" with this approach.[3]

In summarily denying the petition, the court found that in his plea colloquy appellant "clearly admitted that he participated in the assault which killed the victim in this case. And the plea document goes on. And the court believes that his [*sic*] personal admission on the record in conjunction with the other facts which were admitted in that colloquy in addition to the plea to the 187(a) and admission of personal use makes him ineligible for relief as sought. In the preliminary hearing transcript [*sic*] the evidence is that [appellant] personally at least held the victim and more likely beat the victim during the time the victim was killed. This was not a person who was standing outside while the co-defendant went inside to commit the robbery and then the co-defendant killed the victim and [appellant] was not personally present. [Appellant] was not only personally present, he was an active participant. [Appellant] possessed implied malice and implied intent to kill, actual malice and implied into to kill in his actions that day. And for this reason the court finds he is ineligible for relief sought under [section] 1170.95."

## DISCUSSION

Appellant contends the trial court erred in summarily denying his section 1170.95 petition instead of issuing an order to show cause and holding an evidentiary hearing. The People correctly concede the issue.

---

[3] As the People note, the court misspoke by referencing the preliminary hearing transcript because there is no such transcript. In light of the court's subsequent remarks, it is also clear that the court relied on information in the probation report notwithstanding its indication that it would not do so.

Senate Bill No. 1437 (2017-2018 Reg. Sess.), which became effective on January 1, 2019, was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  Senate Bill No. 1437 also added section 1170.95, which allows those "convicted of felony murder or murder under the natural and probable consequences doctrine . . . [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:  [¶]  (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder [or] murder under the natural and probable consequences doctrine . . . .  [¶]  (2) The petitioner was convicted of murder . . . following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder . . . .  [¶]  (3) The petitioner could not presently be convicted of murder . . . because of changes to [s]ection 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a).)

Section 1170.95 includes a prima facie determination. Under subdivision (c), the trial court must receive briefing from the parties and "determine whether the petitioner has made a prima facie case for relief.  If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause."  (§ 1170.95, subd. (c).)  The court is not limited to the allegations of the petition and may "rely on the

7

record of conviction in determining whether that single prima facie showing is made." (*People v. Lewis* (2021) 11 Cal.5th 952, 970 (*Lewis*).) If the record of conviction establishes the petition lacks merit as a matter of law, the trial court may deny the petition without conducting further proceedings. (*Id.* at p. 971 ["The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].)

"While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, "'the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause.'" [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] . . . [T]he 'prima facie bar was intentionally and correctly set very low.'" (Id. at p. 972.)

Here, the trial court denied the petition before issuing an order to show cause even though there were no readily ascertainable facts establishing appellant was ineligible for resentencing as a matter of law.  Appellant pleaded guilty to murder with no other charges or enhancements that necessarily establish he was the actual killer, acted with the intent to kill, or was a major participant who acted with reckless indifference to human life.  Contrary to the trial court's assertion, appellant did not admit or otherwise stipulate to any factual basis for his plea.  Accordingly, his guilty plea to murder does not preclude him from establishing a prima facie case for relief under section 1170.95.  (See, e.g, *People v. Davenport* (2021) 71 Cal.App.5th 476, 481-484; *People v. Eynon* (2021) 68 Cal.App.5th 967, 975-979.)  When appellant entered his plea, the law permitted him to be convicted of murder under a felony murder theory "without being the actual killer, acting with intent to kill, or being a major participant in the underlying felony who acted with reckless indifference to human life."  (*Eynon*, at pp. 975-979.)  Thus, his admission to the alleged conduct did not necessarily include "any factual admissions that refute his allegation that he is eligible for relief under section 1170.95."  (*Id.* at p. 979.)

Moreover, even assuming that the court could properly consider the probation report at the prima facie stage, the statements within that document were only evidence of appellant's actions and were not conclusive as a matter of law.  As *Lewis* makes clear, the trial court could not rely on this evidence at the prima facie stage to find that appellant acted with an intent to kill and was thus ineligible for resentencing under section 1170.95. (*Lewis*, *supra*, 11 Cal.5th at p. 979.)  The court's conclusion is also based on the erroneous premise that

appellant admitted the personal weapon use allegation rather than his codefendant Michael, who was the actual killer.

Construing the allegations of the petition in appellant's favor—as section 1170.95 requires—the petition fulfilled the prima facie requirements for relief. Accordingly, the trial court should have issued an order to show cause and held an evidentiary hearing. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) We will reverse the trial court's order denying the petition and remand with directions to issue an order to show cause under amended section 1170.95, subdivision (c), and hold a hearing under amended section 1170.95, subdivision (d). We express no opinion about whether appellant is entitled to relief following the hearing.

## DISPOSITION

The order summarily denying appellant's section 1170.95 petition is reversed. On remand, the trial court shall issue an order to show cause and proceed with an evidentiary hearing pursuant to section 1170.95, subdivision (d).

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur

GILBERT, P.J.

TANGEMAN, J.

10

Ricardo M. Goul, Judge
Superior Court County of Los Angeles

_____

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pitney, Senior Assistant Attorney General, Amanda V. Lopez, Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.